IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | § § § | |
| Plaintiff, | § § | |
| and | § § | |
| ANEDA BIRKNER, | § § | CIVIL ACTION NO. H-09-3062 |
| Plaintiff-Intervenor, | § § | |
| v. | § § | |
| GUARDSMARK, LLC, | § § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Guardsmark LLC's Motion to Dismiss Intervening Complaint; Alternatively Motion for Partial Judgment on the Pleadings (Document No. 39) and Amended Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 62).[1] After careful consideration of the motions, responses, supplemental responses, replies, and the applicable law, the Court concludes as follows.

---

[1] The latter Amended Motion supercedes Guardsmark's Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 60), which therefore is DENIED as moot.

I. Background

This sex discrimination case was initially filed against Defendant Guardsmark LLC ("Guardsmark") by Plaintiff Equal Employment Opportunity Commission (EEOC). The EEOC and Guardsmark agreed to a Consent Decree, leaving in the case Intervenor-Plaintiff Aneda Birkner ("Birkner"), whose claims against Guardsmark were "expressly not resolved" by the Consent Decree.[2] Birkner alleges (1) violations of the Equal Pay Act of 1963; (2) disparate treatment in violation of 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981(b)(1); (3) hostile work environment because of her sex in violation of 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981(b)(1); and (4) retaliation under Title VII.[3]

Guardsmark provides businesses with uniformed security guard staff.[4] Guardsmark hired Birkner and assigned her to work at a company, which in this Memorandum and Order will be referred to as "XYZ Company" ("XYZ").[5] XYZ allegedly told Guardsmark that it did not want any women security guards at its facilities, and requested

---

[2] See Document No. 81 at 2.

[3] Document No. 15 at 4-7 (Original Complaint in Intervention).

[4] Document No. 62, ex. 1 at 2.

[5] Id. It is to preserve the agreed confidentiality of the Conciliation Agreement between Birkner and the separate company to which Guardsmark provided guard services, that the separate company is referred to herein as "XYZ."

2

that they be transferred to other job sites.[6] Guardsmark allegedly complied with XYZ's request and that of at least one other company, and reassigned Birkner to a position 20 miles farther away from her home, which she regarded as less favorable, and which included lower pay.[7] She alleges that her supervisors at Guardsmark told her that the client companies did not want women working for them.[8] When Birkner complained about the inconvenient transfer and lower pay, she was allegedly first told that she would get the extra money back later, and when she complained again, she was told to "get a second job."[9]

Birkner filed her complaint with the EEOC, which divided the complaint into two actions: (1) Charge Number 460-2007-03549, against XYZ, and (2) Charge Number 460-2007-03536, against Guardsmark, for acquiescing to XYZ's demands.[10] On August 31, 2009, XYZ, the EEOC, and Birkner entered into a confidential Conciliation Agreement, settling the charge against XYZ.[11] Guardsmark was not a party to that settlement.

---

[6] Document No. 15 at 3.

[7] Id.

[8] Id.

[9] Id.

[10] Document No. 62, ex. 2 at 31-32 (EEOC Charges against Guardsmark and XYZ).

[11] Document No. 62, ex. 2 at EEOC 01003-01011.

Guardsmark moves to dismiss Birkner's intervening complaint for insufficiency of process and service of process, and moves for judgment on the pleadings for failure to state claims for equal pay violations and hostile work environment.[12] Additionally, after learning of the Conciliation Agreement between XYZ, the EEOC, and Birkner, Guardsmark moved for summary judgment, contending that the agreement also releases it from liability, or, in the alternative, that Guardsmark is entitled to a set-off in the amount XYZ paid to Birkner for her transfer from XYZ.[13]

## II. Service of the Intervening Complaint

"A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c).

Rule 5(b)(2) provides:

> A paper is served under this rule by:
>
> . . .
>
> (C) mailing it to the person's last known address--in which event service is complete upon mailing

---

[12] Document No. 39.

[13] Document No. 62.

. . .

>  (E)  sending it by electronic means if the person consented in writing--in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served.

FED. R. CIV. P. 5(b)(2).

A party must appear in a case in order to be served pursuant to Rule 5. FED. R. CIV. P. 5(a)(2); Fluor Eng'rs & Constr., Inc. v. S. Pac. Transp. Co., 753 F.2d 444, 449 n.7 (5th Cir. 1985). After appearance, a party must be served by serving its attorney of record. FED. R. CIV. P. 5(b)(1); Daniel Int'l Corp. v. Fischbach & Moore, Inc., 916 F.2d 1061, 1063 (5th Cir. 1990).

Birkner mailed her complaint by certified mail to Guardsmark, return receipt requested.[14] Further, Birkner certifies that she served the motion to intervene on Guardsmark's counsel through the Electronic Case Filing System of the Southern District of Texas on November 11, 2009.[15] By that time, Guardsmark had already appeared

---

[14] Document No. 19 at 3.

[15] See Document No. 11 at 2. Birkner first filed a motion to intervene on October 3, 2010. See Document No. 4. That motion, however, did not comport with Local Rule 7.1. See Document No. 9. In response to the Court's Order to file a supplemental Certificate of Conference, Birkner refiled her motion on November 11, after Guardsmark had filed its Answer on October 21. Therefore, Guardsmark's contention that it had not yet appeared as of the filing of Birkner's motion to intervene lacks merit.

5

in the case, having filed an Answer to the EEOC's complaint.[16] Guardsmark's counsel admits that the summons was forwarded to him by Guardsmark's registered agent.[17] Additionally, Guardsmark agreed to Birkner's motion to intervene.[18] Guardsmark's counsel consented to electronic notice in writing when he registered with the Southern District of Texas District Court CM/ECF system to receive electronic filing.[19] Because Birkner's motion to intervene and intervening complaint were mailed, sent electronically, and received by counsel for Guardsmark, service of the intervening complaint is amply sufficient under Rule 5. FED R. CIV. PRO. 5(a)(1)(B), 5(b)(2); see also J.D. Fields & Co., Inc. v. Tug Elizabeth S, No. Civ. A. 97-3694, 2000 WL 98172, *3 (E.D. La. Jan. 27, 2000).

---

[16] Document No. 5.

[17] See Document No. 40, ex. A at 1-2 (Leviton Decl.)

[18] Document No. 10. Guardsmark reserved all its defenses, procedural and otherwise, in stating that it was unopposed to Birkner's motion. It referenced the motion and its Docket Entry in its response, which indicates that it had received the motion.

[19] "Attorneys admitted to the bar of this Court, as well as those admitted *pro hac vice*, are required to register as Filing Users of the Court's Electronic Filing System. . . . Registration as a Filing User constitutes consent to electronic service of all documents as provided in these procedures and in accordance with Rule Fed. R. Civ. P. 5(b)(2)(D)." Administrative Procedures for Electronic Filing in Civil and Criminal Cases, S.D. Tex. L.A.R. 2(A) (Jan. 1, 2007).

### III. Judgment on the Pleadings

#### A. Legal Standard

A motion for judgment on the pleadings under Rule 12(c) may be granted only if there are no material facts in dispute and the pleadings conclusively show that the moving party is entitled to judgment as a matter of law. *See* Voest-Alpine Trading USA Corp. v. Bank of China, 142 F.3d 887, 891 (5th Cir. 1998). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

A party may move for dismissal on the pleadings under Rule 12(c) after filing an answer. *See* FED. R. CIV. P. 12(h)(2); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1367, at 514-16. In determining whether the plaintiff has stated a claim upon which relief may be granted, the district court must accept well-pleaded facts as true, viewing them in a light most favorable to the plaintiff. Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999). To survive dismissal, a complaint must plead "enough facts to state

7

a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

B.  Discussion

1.  Equal Pay Act

To establish a prima facie claim under the Equal Pay Act, a plaintiff must allege facts supporting that: "(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison." Chance v. Rice Univ., 984 F.2d 151, 153 (5th Cir. 1993) (citing Jones v. Flagship Int'l, 793 F.2d 714, 722-23 (5th Cir. 1986)).

8

Birkner specifically alleges that Guardsmark, at all relevant times, was "an employer as defined by Title VII" and that Birkner was an employee as defined by Title VII.[20] Birkner claims that after initially being paid $10 per hour at XYZ, which required male guards, she was transferred to another location because of her sex, not her work performance,[21] and her wages were reduced to only $9 per hour.[22] Taking the facts Birkner pleads as true, she has stated a plausible claim under the Equal Pay Act.

2. <u>Hostile Work Environment</u>

To establish a sexual harassment claim based on a hostile work environment, Birkner must show: (1) she is a member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Harvill v. Westward Commc'ns, LLC</u>, 433 F.3d 428, 434 (5th Cir. 2005) (citing <u>Woods v. Delta Beverage Group, Inc.</u>, 274 F.3d 295, 298 (5th Cir. 2001)). When immediate supervisors are the instruments of the harassment, a plaintiff need

---

[20] Document No. 15 at 4.

[21] <u>Id.</u> at 3.

[22] <u>Id.</u>

9

not prove the fifth element of her hostile work environment claim. See Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 353 (5th Cir. 2001) (citing Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2292-93 (1998)).

"A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 328 (5th Cir. 2009) (quoting National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2074 (2002)).

Birkner conclusorily alleges that she "was regularly subjected to abusive communications from her male supervisors and was constantly subjected to greater performance scrutiny than were the male guards at the post."[23] This pleading neither states nor gives rise to the inference that the abusive communications were motivated by Birkner's sex. See Oncale v. Sundowner Offshore Serv., Inc., 118 S. Ct. 998, 1002 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'" (emphasis in original)). Also, Birkner does not give any details to support that the alleged verbal abuse was so severe or pervasive

---

[23] Document No. 15 at 2.

10

that it created a hostile work environment. See <u>Harvill</u>, 433 F.3d at 434. Therefore, she has failed to plead a plausible hostile work environment claim, and the claim therefore will be dismissed. However, the Court will grant Birkner's request to replead if in fact a claim of hostile work environment can be pled consistent with the requirements of Federal Rule of Civil Procedure 11(b).

## IV. Motion for Summary Judgment

### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant must "demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. <u>Id.</u> "[T]he nonmoving party must set forth

11

specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513. "'[O]rdinarily, summary disposition of Title VII cases is not favored, especially on a potentially inadequate factual presentation.'" Jones v. W. Geophysical Co. of Am., 669 F.2d 280, 283 (5th Cir. 1982) (quoting Logan v. Gen. Fireproofing Co., 521 F.2d 881, 883 (4th Cir. 1971)).

B.  Discussion

Guardsmark moves for summary judgment based solely on the Conciliation Agreement between the EEOC, Birkner, and XYZ, which resolved EEOC Charge Number 460-2007-03549, specifically the claims that Birkner had made against XYZ. It argues that (1) because the EEOC and Birkner released XYZ, they also released Guardsmark; (2) Guardsmark is an agent of XYZ, and, as such, any release of the principal releases the agent; and (3) even if found to be a joint tortfeasor with XYZ, Guardsmark is entitled to set-offs in the judgment against it for the amount that Birkner has received from the XYZ settlement.[24]

Birkner argues that (1) federal law, not state law, governs the interpretation and validity of the Conciliation Agreement; (2) agency principles do not apply to this case as between employer and client, as Guardsmark is not the agent of XYZ, its client; and (3) set-off is unavailable under Title VII.[25]

1.  Release of Guardsmark

"What a contract means, and whether a contract is ambiguous, are questions of law for the court." Jones v. Francis Drilling Fluids, Ltd., 642 F. Supp.2d 643, 659 (S.D. Tex. 2009) (Rosenthal,

---

[24] Document No. 62, ex. 1 at 6-12.

[25] See Document No. 70 at 9.

13

J.) (citing <u>Heritage Res. Inc. v. NationsBank</u>, 939 S.W.2d 118, 121 (Tex. 1996)). A court determines whether a contract is ambiguous by looking at the contract as a whole in light of the circumstances present when the parties entered the contract. <u>Id.</u> (citing <u>Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.</u>, 121 S.W.3d 742, 746 (Tex. 2003)); see also RESTATEMENT (SECOND) OF CONTRACTS § 212(1) (1981).[26] "When a contract is unambiguous, its terms will be given their plain meaning and will be enforced as written." <u>In re Isbell Records, Inc.</u>, 586 F.3d 334, 337 (5th Cir. 2009) (citing <u>Reliant Energy Servs., Inc. v. Enron Canada Corp.</u>, 349 F.3d 816, 822 (5th Cir. 2003)).

The Conciliation Agreement between the EEOC, XYZ, and Birkner states, in relevant part:

> 4. <u>Reporting Requirements</u>- The Respondent (restricted solely to the facilities located at [XYZ's 1st Facility address], and [XYZ's 2nd Facility address]) agrees to maintain the records and to provide any written reports of training or employment discrimination complaints, excluding privileged documents, upon the request of the Commission.

---

[26] The parties dispute whether Texas state law or federal common law applies to the interpretation of the Conciliation Agreement, but both Texas law and federal common law apply the plain meaning rule to the language of the contract in light of the circumstances. See RESTATEMENT (SECOND) OF CONTRACTS § 212(1) (1981) ("The interpretation of an integrated agreement is directed to the meaning of the terms of the writing or writings in the light of the circumstances. . . .").

14

> 5. <u>Without Prejudice to other Pending Charges</u>- All parties agree that the settlement of the instant charge is intended to be without prejudice to other pending charges Respondent may have pending with the U.S. Equal Employment Opportunity Commission, <u>except that any and all Title VII claims that may have been alleged against [XYZ][27], in Charge No. 460-2007-03536 [Birkner v. Guardsmark, LLC and [XYZ][28]] are resolved by this Agreement.</u>[29]

The Conciliation Agreement was negotiated and signed by the EEOC, Birkner, and XYZ.[30] Guardsmark was not a party to the agreement, was not present during the negotiations,[31] did not sign the document, and furnished no consideration for the agreement.[32] In fact, Guardsmark did not even know about the Conciliation Agreement until some six months after it was signed. The XYZ Conciliation Agreement specifically provides that "any and all Title VII claims that may have been alleged against [XYZ] in Charge No. 460-2007-03536 . . . are resolved by this Agreement." The operative phrase in the Agreement, "any and all Title VII claims

---

[27] Redacted name.

[28] Redacted name.

[29] Document No. 31, ex. 1 at EEOC 01005 (emphasis in original).

[30] <u>Id.</u> at EEOC 01008.

[31] Birkner concedes that Guardsmark's local counsel was present by telephone briefly at the start of the conciliation meeting, but was there "for a very short time." See Document No. 70 at 5.

[32] See id. at 19.

15

*that may have been alleged against [XYZ]"*[33] conspicuously--as would be expected--does *not* include as "resolved" any and all claims alleged or that may be alleged against *Guardsmark* in Charge No. 460-2007-03536. Guardsmark is not a released party. The agreement is unambiguous; Birkner did not release her claims alleged in this case against Guardsmark.

Nonetheless, Guardsmark maintains that it is entitled to a release from liability because it was either a joint tortfeasor with XYZ or XYZ's agent.[34] Guardsmark mistakenly relies on an ancient common law rule that the release of one joint tortfeasor releases all joint tortfeasors, citing Palestine Contractors, Inc. v. Perkins, 386 S.W.2d 764, 778 (Tex. 1965).[35] Both federal common law and Texas state law have long since repudiated that rule.

Decades ago the Supreme Court, applying federal common law, disavowed the "ancient common-law rule" that a release of one tortfeasor operates to release all others. Zenith Radio Corp. v Hazeltine Research Inc., 91 S. Ct. 795, 808-09 (1971). The effect of release on joint tortfeasors "shall be determined in accordance with the intentions of the parties." Id. "The straightforward

---

[33] *See* Id. (emphasis added).

[34] *See* Document No. 62, ex. 1 at 8.

[35] Palestine Contractors relied on Bradshaw v. Baylor Univ., 84 S.W.2d 703 (1935), which was expressly overruled by Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 432 (Tex. 1984).

16

rule is that a party releases only those other parties whom he intends to release." Id. at 810 (holding that the defendant who was not a party to the release was not entitled to the benefits of the release).

Likewise, in McMillen v. Klingensmith, 467 S.W.2d 193, 196 (Tex. 1971), the Texas Supreme Court repudiated the "unity of release rule" that stated that a settlement with one joint tortfeasor operated as a settlement with all of them. In McMillen, the release only named the automobile driver and did not name the physicians who treated the plaintiff. Id. at 194. Rejecting the "unity of release rule," the Court said:

> The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparation are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and, second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability.

Id. (quoting McKenna v. Austin, 134 F.2d 659, 662 (D.C. Cir. 1943)).

Thus, "[u]nless a party is named in a release, he is not released." Id. at 196; accord Duncan v. Cessna Aircraft Co., 665

S.W.2d 414, 419-20 (Tex. 1984) ("A tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt."). Further, "[t]o effectuate these policies, we must narrowly construe general, categorical release clauses. A nonsettling tortfeasor should not fortuitously escape compensating his Texas victim simply because of settlement arrangements that did not encompass him or his conduct and to which he contributed nothing." Duncan, 665 S.W.2d at 422. In sum, Birkner did not release her claims against Guardsmark when she signed the Conciliation Agreement with XYZ and the EEOC, and the Conciliation Agreement itself, which released XYZ, did not by operation of law also release Guardsmark.

2. Set-off

Guardsmark contends that if it was not released by Birkner in the Conciliation Agreement with XYZ, and "if Guardsmark is later found to be liable to the class members under the EEOC's theory, Guardsmark is entitled to a setoff in the amount paid by XYZ under the Conciliation Agreement to each class member . . . ." On this point Guardsmark is seeking an advisory opinion. "If" Guardsmark is later found to be liable to Birkner and damages are awarded, and "if" the question of offset then arises by reason of what Birkner

previously received in her settlement with XYZ, it may then be ripe for decision. But not now.

## V. Order

For the foregoing reasons, it is

ORDERED that Defendant Guardsmark LLC's Motion to Dismiss Intervening Complaint; Alternatively Motion for Partial Judgment on the Pleadings (Document No. 39) is GRANTED IN PART, and Birkner's hostile work environment claim is DISMISSED, without prejudice to Birkner, within fourteen (14) days after the date of this Order, filing a more definite statement in the form of an Amended Complaint in Intervention, if she can do so consistent with the requirements of Fed. R. Civ. P. 11(b); and the Motion to Dismiss is otherwise DENIED. It is further

ORDERED that Guardsmark LLC's Amended Motion to Dismiss or in the Alternative for Summary Judgment (Document No. 62) is DENIED.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas, on this 22d day of December, 2010.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE